STATE of Missouri, Respondent,

v.

John CORNELIUS, Appellant.

No. 22619.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 17, 1999.

Thomas Pyle, Stockton, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Kristin M. Frazier, Asst. Atty. Gen., Jefferson City, for Respondent.

ROBERT S. BARNEY, Judge.

John Cornelius ("Defendant") appeals the judgment entered by the Circuit Court of Lawrence County, Missouri, after a bench trial, wherein he was convicted of the Class B felony of possession of a controlled substance (methamphetamine) with intent to distribute, § 195.211, RSMo 1994. The trial court sentenced Defendant to a term of imprisonment of five years in the Missouri Department of Corrections. Defendant appeals contending that the trial court erred in denying his motion to suppress the physical evidence obtained during the execution of the search warrant which led to his conviction. In his sole point, he does not contest the sufficiency of the evidence supporting his conviction. Rather, Defendant maintains that the affidavit supporting the search warrant did not establish probable cause to conduct a search of Defendant's property for drugs. We affirm the judgment.

The record shows that Trooper Daniel F. Nash, Missouri State Highway Patrol, executed an affidavit in support of a request for a warrant to search Defendant's residence (described as "a two story brick saltbox house with a shingle roof"), a blue and grey metal outbuilding west of the residence and any persons and vehicles that may be present at the time of the execution of the warrant. The affidavit recited that Trooper Nash had received information from a confidential informant who had knowledge of methamphetamine, drug paraphernalia and marijuana being stored in Defendant's residence and the metal outbuilding west of the residence. The search warrant was duly issued.

As trooper Nash and other officers arrived at Defendant's residence to serve the warrant, Defendant was in the process of leaving the premises. He was stopped and searched and a small vial was found in his left front pocket.[1] It contained about a quarter of a gram of methamphetamine. Defendant was informed of the search warrant and was advised of his Miranda rights and was arrested for possession of methamphetamine. Officer Nash asked Defendant if there were any other narcotics on his property and Defendant answered in the affirmative and directed the officers to a file cabinet inside the metal outbuilding where Defendant lived and ran a heating and cooling business located some fifty to sixty yards west of Defendant's residence.[2] During the ensuing search officers found a metal can in the file cabinet in which were plastic bags containing, methamphetamine, white rice and marijuana. Additionally, officers found two razor blades, marijuana seeds, several screens for a marijuana pipe, two mirror plates, coffee filters with methamphet-

---

1. The record does not reveal whether the vial was found in Defendant's shirt pocket or pants pocket.

2. The record shows that Defendant's "main residence" was "in the middle of construction" and that "the top floor [was] unfinished." The record also revealed that men's "clothing and bathroom toiletries" were found in the metal outbuilding.

amine residue, and the outer shell of a writing pen. Three thousand two-hundred dollars ($3,200.00) was also discovered in the bottom drawer of the file cabinet.

A search of the bedroom of the metal outbuilding revealed a bottle of "Super Inositol" (used as a cutting agent to dilute methamphetamine before distribution to users) and a "triple beam scale" used for the packaging and distribution of methamphetamine.

■ "In reviewing a motion to suppress based upon an insufficient warrant, this court gives great deference to the initial judicial determination of probable cause made at the time of the issuance of the warrant, and reverses only if that determination is clearly erroneous." *State v. Bowen*, 927 S.W.2d 463, 465 (Mo.App. 1996). "Probable cause sufficient to justify the issuance of a search warrant is determined by looking to the totality of the circumstances, and only the probability, not a prima facie showing, of criminal activity, is the standard by which the existence of probable cause is measured." *State v. Thomas*, 737 S.W.2d 247, 249 (Mo. App.1987).

■ "The neutral magistrate must make a 'practical, commonsense decision whether ... there is a fair probability that contraband or evidence of a crime will be found.'" *State v. Berry*, 801 S.W.2d 64, 66 (Mo. banc 1990)(quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)). "That decision is made from all the circumstances set out in the affidavit, including the 'basis of knowledge' and 'veracity' of persons providing hearsay information." *Id.*

■ "In reviewing whether the issuing judge was clearly erroneous, this court looks to the four corners of the affidavit in support of the search warrant...." *Bowen*, 927 S.W.2d at 465; *see also State v. Laws*, 801 S.W.2d 68, 70 (Mo. banc 1990). "The affidavit in support of a search warrant should be weighed as understood by those versed in law enforcement and not in terms of library analysis by scholars." *State v. Hill*, 854 S.W.2d 814, 818 (Mo.App. 1993). "[A] grudging or negative attitude toward warrants by reviewing courts is inconsistent with the Fourth Amendment's preference for searches by warrant; and courts should not invalidate warrants by interpreting affidavits in a hypertechnical rather than common sense manner." *Id.*

■ In his sole point, defendant challenges the affidavit supporting the request for the search warrant because it failed to show that the confidential informant had personal knowledge of drugs located at defendant's premises and the affidavit failed to show the circumstances of how the confidential informant acquired this information. The affidavit supporting the instant search warrant is set out as follows:

STATE OF MISSOURI)

COUNTY OF DADE )

Daniel F. Nash, Missouri State Highway Patrol, being duly sworn, states that I have received reliable information from a confidential informant, concerning methamphetamine, a controlled substance, and or devices used for the packaging, use, and distribution of methamphetamine and marijuana are being stored at a residence located on MO. Rt. 0, the first residence South and East of U.S. 160 in Greenfield, Missouri, a two story brick saltbox house with a shingle roof and a blue and grey metal outbuilding directly West of the residence. The residence is commonly known as the John Cornelius residence. Search to include the persons of all individuals present at the execution of this warrant as well as late arriving guest(s) and any vehicles associated with any such person and which is either on the search situs or located immediately adjacent to.

I believe that this property is now located upon the described person, place or thing based upon the following facts:

I, Daniel F. Nash, have been with the Missouri State Highway Patrol for the past 2 years, and am currently assigned to Troop D, Zone 9. During this period of time, I have assisted in the execution of approximately 10 drug related search warrants. In addition, I have arrested over 200 persons as a result of my drug related investigations. Based upon my experience in these matters and the facts set forth hereafter, it is my belief that the aforementioned contraband will be found on the premises as stated above.

Within the last twenty-four (24) hours, I was contacted by a reliable, cooperating individual who has given reliable information in the past which has resulted in several arrests, convictions and drug related seizures. He/She stated that at this residence located on Rt. 0, the first residence South and East of U.S. 160 in Greenfield, Missouri, he/she had knowledge of methamphetamine, drug paraphernalia and marijuana being stored inside the residence and metal outbuilding. The informant stated that inside the metal building in a file cabinet there is a round metal container containing a white powder believed to be methamphetamine and a quantity of marijuana. The informant also stated that under the sink in the outbuilding there is a set of scales being used during drug transactions. Accordingly, over the last several months the Missouri State Highway Patrol has received several complaints concerning possible drug activity and excessive vehicle traffic at this residence.

Based on my background and training, I know that drug dealers store contraband on their premises. Finally I know that persons present at the execution of this warrant, as well as late arriving guest are likely to be persons involved in the illegal drug culture. Accordingly I know that they are likely to hold their drug of choice on their persons or in their personal vehicles or vehicles under their control. I also know, that persons involved in the illegal drug culture hide drugs in their vehicles while the vehicles are parked at their own residence. I base these assessments on my background, training, work experience, and previous drug investigations, where I found this to be true.

██ "Missouri courts have held that the 'personal knowledge of the informant corroborated through other sources is enough to establish probable cause.'" *Berry*, 801 S.W.2d at 66 (quoting *State v. Moiser*, 738 S.W.2d 549, 557 (Mo.App. 1987)). Here, the affidavit in question was not signed by the informant, so the statement attributed to the informant is itself hearsay. Nevertheless, hearsay can be a proper basis to establish probable cause if there is a substantial basis for crediting the hearsay. *See Hill*, 854 S.W.2d at 818; *United States v. Harris*, 403 U.S. 573, 581, 91 S.Ct. 2075, 2081, 29 L.Ed.2d 723, 732 (1971); *State v. Ambrosio*, 632 S.W.2d 262, 265 (Mo.App.1982). "[T]ips by informants found to be reliable in the past are sufficient information alone to support an issuing judge's finding of probable cause." *State v. Vega*, 875 S.W.2d 216, 218 (Mo. App.1994).

The facts in the instant case are similar to those in *Berry, supra*. In *Berry* an anonymous caller informed sheriff's deputies of a quantity of marijuana at the home of defendants Melissa and Jimmy Berry. The tip described with particularity the outside of the Berry home and indicated personal knowledge of the existence of the marijuana in the Berry home. The anonymous caller described a single-wide trailer mobile home, tan in color. It had a small deck in the front with a small above-ground swimming pool, described as a metal livestock water trough, on the deck. The caller also described the type of motor vehicles located next to the Berry home. This information was verified by sheriff's deputies prior to requesting a search warrant. Additionally, the caller recounted having seen four or five freezer bags containing what appeared to be marijuana at

the home on the same day the anonymous call was made. The *Berry* court stated that the anonymous caller's "detailed information bears the unmistakable marks of firsthand observation." *Berry,* 801 S.W.2d at 67.

Here the affidavit shows that the informant's information was persuasively corroborated by his past record with law enforcement authorities, in that he has given reliable information in the past which has resulted in several arrests, convictions and drug related seizures. *See Laws,* 801 S.W.2d at 70; *Hill,* 854 S.W.2d at 818 (corroboration can also be supplied by a statement in the affidavit that the informant, to whom the hearsay statement is attributed, has been found to be reliable in the past); *accord, Bowen,* 927 S.W.2d at 466.

While there may be no explicit statement within the affidavit as to the source of the informant's knowledge and information, the informant's personal knowledge of Defendant and his operation is easily inferable from the details described within the affidavit, particularly when they are borne out to be accurate. This is aptly demonstrated by the level of detail in the information provided for the warrant. The informant's description of Defendant's residence is not like someone who has been told about a particular house, but rather like one who has seen the house, watched the house and studied it. The affidavit showed that the informant had told Trooper Nash that there existed on Defendant's property a metal outbuilding near the residence; and that in the metal outbuilding there was a file cabinet; and in the file cabinet there was a metal container. It further stated that in the round metal container, there would be "a white powder believed to be methamphetamine and a quantity of marijuana." It also stated that a set of scales, typically used for drug packaging and distribution, would be found under a sink. A neutral magistrate reasonably could have construed such specifics as an indication of the informant's personal knowledge of Defendant's drug operation and the reliability of his information. *See Bowen,* 927 S.W.2d at 466 ("the level of detail ... shows a fair probability that contraband would be found at [defendant's premises]"). Additionally, the informant's specific description about how drugs would be found in a small, metal container inside of a file cabinet that was inside the metal outbuilding on Defendant's property showed a level of detail that indicates personal rather than second hand knowledge. *Id.* (the description bears the unmistakable marks of firsthand observation); *see also Berry,* 801 S.W.2d at 67.

Further corroboration of the confidential informant's statements is lent by Trooper Nash's recitals in the affidavit that the Missouri Highway Patrol had received several complaints concerning possible drug activity and excessive vehicle traffic at Defendant's residence. Lastly, the affidavit tends to show that the information given Trooper Nash by his informant was fresh, in that Trooper Nash received the information from his confidential source within "the last twenty-four (24) hours."

"The trial court's ruling is to be sustained if it is plausible, in light of the record viewed in its entirety, even if the reviewing court might have weighed the evidence differently if it were sitting as the trier of fact." *Hill,* 854 S.W.2d at 819. "Even cases where the sufficiency of the affidavit is marginal should be largely determined by the preference to be accorded to warrants." *Id.*

We hold that under the totality-of-the circumstances test the issuing judge had a substantial basis for concluding there was a fair probability that contraband would be found on defendant's premises. Defendant's point is denied. The judgment of conviction is affirmed.

MONTGOMERY, P.J., and PREWITT, J., concur.