DON E. BURRELL, J.
Verl Jason Cato ("Defendant") appeals the judgment that followed jury verdicts finding Defendant guilty of six counts of possessing child pornography in 2011 and 2012. See section 573.037.[1] Defendant's sole point on appeal claims the trial court erred in overruling his "Second Motion to Suppress" and admitting at trial evidence he claims was obtained as a result of "the April 12, 2012 search warrant[.]" Defendant maintains that such evidence should have been suppressed because the affidavit supporting the search warrant "contained no facts or circumstances giving rise to probable cause of a crime[.]"
Because the search was authorized under an earlier warrant not challenged by Defendant, we affirm.
Governing Law & Applicable Principles of Review
The Fourth Amendment to the United States Constitution guarantees that no warrant shall issue except upon probable cause supported by oath or affirmation. State v. Neher , 213 S.W.3d 44, 48-49 (Mo. banc 2007). "In determining whether probable cause exists, the issuing magistrate or judge must 'make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him [or her,] ... there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " Id. at 49, quoting Illinois v. Gates , 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527, (1983). "Accordingly, in reviewing a trial court's ruling on a motion to suppress evidence seized pursuant to a search warrant, the court gives great deference to the initial judicial determination of probable cause that was made at the time the warrant issued." Id. , citing State v. Berry , 801 S.W.2d 64, 66 (Mo. banc 1990). An appellate court only will reverse if the issuing magistrate or judge clearly erred in initially determining, based on the totality of the circumstances, that probable cause existed. Id. , citing State v. Norman , 133 S.W.3d 151, 159 (Mo. App. 2004).
State v. Roggenbuck , 387 S.W.3d 376, 379-80 (Mo. banc 2012).
" Article I, section 15 of the Missouri Constitution provides the same guarantees against unreasonable search and *487 seizures; thus, the same analysis applies to cases under the Missouri Constitution as under the United States Constitution." State v. Oliver , 293 S.W.3d 437, 442 (Mo. banc 2009).
We defer to the trial court on its "factual findings and credibility determinations," State v. Sund , 215 S.W.3d 719, 723 (Mo. banc 2007), and we consider "all evidence and reasonable inferences in the light most favorable to the trial court's ruling." Id. In contrast, the legal issue of whether the conduct at issued violated "the Fourth Amendment is an issue of law that this Court reviews de novo. " Id.
Relevant Evidence and Procedural History[2]
In November 2011, Scott Phelps, a detective with the Poplar Bluff Police Department, was using an investigative software tool to "find IP addresses which have child pornography available to download[.]" The software would also "connect to those IP addresses and attempt to download files or just get the file list." Detective Phelps described an IP address as a unique number for a connection to the internet, and he testified that it is possible to trace an IP address to a physical location. The files at issue were available via "Peer-to-Peer software" that permits a file containing an image of child pornography to be copied directly from one computer to another computer. Detective Phelps knew from "the nationwide registry" that a specific IP address identified in such a manner ("the IP address") could be provided by a particular communications company, and subpoenas were issued to that company to obtain the identity of the subscriber who used the IP address.
In March 2012, the subpoenaed company identified Defendant as the "account holder/subscriber" for the IP address. Detective Phelps compared files that had been offered via Peer-to-Peer from the IP address with files in a law enforcement library of known images of child pornography, and he determined that 15 files offered from the IP address contained child pornography. Detective Phelps executed an affidavit for a search warrant ("the Phelps affidavit") that included, inter alia , specific descriptions of the content of the images in the 15 identified files available from the IP address.
The prosecutor then used the Phelps affidavit to apply for a search warrant to be executed at Defendant's residence, and a judge approved and issued the search warrant on April 4, 2012 ("the April 4th search warrant"). We will refer to the April 4th search warrant, the Phelps affidavit, and the prosecutor's application, collectively, as "the April 4th warrant documents." The April 4th warrant documents were admitted into evidence at trial.
The April 4th search warrant authorized law enforcement officials to search Defendant's residence and seize:
1) CHILD PORNOGRAPHY
2) ANY AND ALL COMPUTER SYSTEMS
3) ANY AND ALL MOBILE DEVICES
4) ANY AND ALL EXTERNAL MEDIA
5) ANY AND ALL CAMERAS
*488 6) ANY AND ALL OTHER COMPUTER MEDIA
7) ANY AND ALL HANDWRITTEN NOTES IN THE COMPUTER AREA
8) ANY AND ALL PHOTOGRAPHS OF THE COMPUTER AREA
The April 4th search warrant was executed on April 10, 2012, and officers seized three laptop computers, one desktop computer, and one external hard drive (collectively, "the computers") from Defendant's residence. The resulting "RECEIPT" referencing the search warrant was also admitted into evidence at trial, and it included the serial numbers of the computers.
The computers were delivered to Dexter Police Detective Trevor Pulley, who "specializ[ed] in computer forensics." On April 11, 2012, Detective Pulley prepared an affidavit ("the Pulley affidavit") to be used as support for an additional search warrant. The prosecutor applied for the search warrant ("the April 12th application"), and the same judge who had issued the April 4th search warrant approved and issued this second search warrant on April 12, 2012 ("the April 12th search warrant"). We will refer collectively to these documents as "the April 12th warrant documents." The April 12th warrant documents were also admitted into evidence at trial.
The April 12th application did not specifically reference the April 4th warrant documents, but it did include the Pulley affidavit. The Pulley affidavit stated, inter alia , that "[o]n Tuesday April 10, 2012 at approximately 0923 hrs. a search warrant was executed at [the address of Defendant's residence]" and "[s]everal computer related items were seized during the search warrant." The trial court could reasonably infer that the items to be searched upon issuance of the April 12th search warrant were the computers based upon the serial numbers set forth in the Pulley affidavit. The Pulley affidavit also summarized Detective Pulley's training and experience, described difficulties encountered in searching computer components for evidence, identified methods used to overcome those difficulties, and sought authority to make an analysis of the evidence seized beyond the deadline for filing a return of the search warrant.
On April 13, 2012, Detective Pulley made forensic copies of the contents of the computers. He subsequently discovered that "all the child pornography that [was] charged in this case [was] located in" five computer file folders that he had forensically copied from one of the computers.
"DEFENDANT'S SECOND[3] MOTION TO SUPPRESS" ("the suppression motion") claimed that his constitutional rights against unreasonable seizure were violated by the execution of the April 12th search warrant because the Pulley affidavit "nowhere indicates any probable cause *489 that child pornography was, in fact, to be found on the computers[.]" Defendant argues that the facts represented in the Pulley affidavit as showing probable cause were "a canned litany of how computers store data and the knowledge and experience of the affiant as to how that data can be retrieved." The trial court denied the suppression motion after an evidentiary hearing.
At trial, Defendant was granted a continuing objection to the introduction of evidence obtained through the April 12th warrant for the reasons stated in the suppression motion, and Defendant included the claim in the new-trial motion. This appeal timely followed the trial court's denial of the new-trial motion and the imposition of Defendant's sentence.
Analysis
Defendant argues that the demonstration of probable cause necessary for a valid search warrant is limited to "the 'four corners' of the" affidavit supporting it. See Neher , 213 S.W.3d at 49 ("In conducting the review of whether probable cause exists, the appellate court may not look beyond the four corners of the warrant application and the supporting affidavits"). The State responds that whether the April 12th warrant was valid is irrelevant because "[t]he April 4th search warrant was sufficient to authorize the subsequent forensic examination of [the computers] for evidence of child pornography, making the April 12th search warrant superfluous[.]" We agree.
While section 542.276.8 provides for the expiration of a search warrant "if it is not executed and the return made within ten days after the date of the making of the application[,]" it also authorizes subsequent searches of property seized pursuant to the warrant:
A search and any subsequent searches of the contents of any property, article, material, or substance seized and removed from the location of the execution of any search warrant during its execution may be conducted at any time during or after the execution of the warrant, subject to the continued existence of probable cause to search the property, article, material, or substance seized and removed. A search and any subsequent searches of the property, article, material, or substance seized and removed may be conducted after the time for delivering the warrant, return, and receipt to the issuing judge has expired. A supplemental return and receipt shall be delivered to the issuing judge upon final completion of any search which concludes after the expiration of time for delivering the original return and receipt.
Defendant's point and supporting argument do not challenge the scope of the April 4th search warrant nor the validity or application of section 542.276.8 to Detective Pulley's forensic analysis of the seized computers. Thus, Defendant's point is moot, and the judgment of conviction and sentence is affirmed.[4]
MARY W. SHEFFIELD, P.J.-CONCURS
GARY W. LYNCH, J.-CONCURS

All statutory references are to RSMo Cum. Supp. 2010.

Defendant does not challenge the sufficiency of the evidence to support his convictions, and we cite only the evidence and reasonable inferences necessary to address his point relied on. "In reviewing the trial court's denial of a motion to suppress, we consider the evidence presented at both the suppression hearing and at trial to determine whether sufficient evidence exists in the record to support the trial court's ruling." State v. Nelson , 334 S.W.3d 189, 193 (Mo. App. W.D. 2011).

A previous "MOTION TO SUPPRESS" ("the first motion") challenged the use of particular software used by the Southeast Missouri Cyber Crimes Task Force "to automate the browsing and downloading of suspected child pornography files from a list of IP addresses" that included the IP address in this case. The first motion was denied, reconsidered, then denied again. The order denying the first motion found that "the initial search of [D]efendant's computer was lawful[,]" and it further found that "sufficient probable cause existed to support the search warrant issued April 4, 2012." Defendant was granted a continuing objection at trial based upon the substance of the first motion, and he raised the matter in his "MOTION FOR JUDGMENT OF ACQUITTAL OR, IN THE ALTERNATIVE, MOTION FOR NEW TRIAL" ("the new-trial motion"). Defendant's point relied on does not challenge the April 4th search warrant, the trial court's denial of the first motion, or the trial court's finding that "the initial search of [D]efendant's computer was lawful."

Because the April 4th search warrant authorized the search, we do not reach the parties' arguments regarding whether the good-faith exception to the exclusionary rule articulated in United States v. Leon , 468 U.S. 897, 922, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), would support the trial court's decision to deny the motion to suppress and admit the challenged evidence at trial.